976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Stephen Allen WALLACE, a/k/a Steve Allen Bishop; and Glenn
Franklin Dean, Jr., Defendants-Appellants, Cross-Appellees.
 Nos. 91-5479, 91-5444 and 91-5445.
 United States Court of Appeals, Sixth Circuit.
 June 19, 1992.
 
 Before NATHANIEL R. JONES, BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Steven Wallace and Glenn Dean, Jr. appeal several aspects of their sentencing in connection with their convictions for transporting a juvenile female across state lines for purposes of sexual assault. The government cross-appeals, protesting the district court's refusal to increase the defendants' sentence on the grounds that they caused a permanent injury to their victim. We reject all appeals and affirm the district court's decision in full.
 
 
 2
 * On December 27, 1989, a sixteen-year-old girl went to a Revco Drugs in Hopkinsville, Kentucky. When she left the store, she noticed a car with two men in it parked near her car. As she unlocked her car door, one of the men, Mr. Wallace, held a knife against her body; he told her not to scream or he would cut her. He then pulled her into the front seat of his car and placed her between himself and the other man, Mr. Dean. Mr. Wallace then pulled her head toward the floor board of the car and again threatened her with the knife. Mr. Wallace and Mr. Dean took the girl to a secluded area in Christian County, Kentucky. After stopping the car, the men removed her clothes and forced her to perform oral sex on them. They also fondled her and had repeated intercourse with her. After Mr. Wallace began complaining that he was late for meeting his wife, the three left the area and began driving again. However, the men soon stopped the car in another secluded place and resumed forcing their victim to have sex with them. Once again, Mr. Wallace announced that he had to pick up his wife. He drove back toward Hopkinsville as Mr. Dean continued to molest the victim. Mr. Wallace repeatedly told the victim that if she said anything when they met his wife, he would kill her.
 
 
 3
 Mr. Wallace then drove through Hopkinsville and toward Clarksville, Tennessee. During the trip, Mr. Dean had intercourse with the victim. When they picked up Mr. Wallace's wife, Dianna Wallace, she came to the driver's car door and announced that she would drive. Mr. Wallace argued with her but eventually moved over to let his wife drive. When they returned to Hopkinsville, Mr. Wallace told his wife to go to McDonald's so he could get a hamburger. By this time, the police had been notified of the victim's disappearance and had found her car, which was parked in a Wal-Mart parking lot near the McDonald's where Mr. Wallace wanted to eat.
 
 
 4
 When Mr. Wallace saw police vehicles around the victim's car, he told his wife to drive past McDonald's. She did so, but then decided to go back toward Wal-Mart. She drove through the Wal-Mart parking lot and stopped at Hu-Nan's Restaurant. The victim asked Ms. Wallace to let her leave the car and Ms. Wallace obliged by raising her seat. The victim jumped out and walked quickly toward a policeman, telling him that she had been raped by the two men in the car. Two policemen pursued the car and stopped it in the McDonald's parking lot adjacent to Wal-Mart. When the car stopped, Mr. Dean left it and ran away; he was caught several days later. Mr. Wallace was arrested at the scene.
 
 
 5
 Mr. Wallace was indicted in the Christian County Circuit Court on one count of rape in the first degree, two counts of sodomy in the first degree, two counts of complicity to commit rape in the first degree, and three counts of complicity to commit sodomy in the first degree. On July 19, 1990, he was found guilty of all eight counts and received a total sentence of eighty years. Mr. Dean was convicted in Christian County Circuit Court on similar charges, and was sentenced to a total of ninety years. The defendants' appeals from these convictions are apparently still pending.
 
 
 6
 Mr. Wallace and Mr. Dean were then charged under federal indictments that stated that each of them, aided and abetted by the other, knowingly transported a juvenile female across state lines for the purpose of committing various acts of assault, rape, and sodomy on her, in violation of 18 U.S.C. § 1201. On November 15, 1990, a jury found them both guilty. In both defendants' pre-sentencing reports, the sentencing officer determined that the base offense level was twenty-seven, pursuant to U.S.S.G. § 2A3.1(a). The officer then added four levels for the use of a deadly weapon, U.S.S.G. § 2A3.1(b)(1), and added four more levels because the victim had been abducted, U.S.S.G. § 2A3.1(b)(5), thus giving a total offense level of 35. Due to previous convictions, both defendants fell within criminal history category III. With a total offense level of 35 and a criminal history category of III, the guideline imprisonment range is 210 to 265 months.
 
 
 7
 Soon after her ordeal, the victim was examined by Dr. James E. Connerth, an obstetrics/gynecology specialist. Dr. Connerth discovered a lesion in the victim's lower vaginal area. He performed a biopsy on the lesion, which indicated that the victim had human papilloma virus (HPV). The lesion also tested positive for all six carcinogenic subtypes of HPV. To combat this virus, the victim went through some experimental treatment, which appears to have been successful. In Dr. Connerth's opinion, although it is still present, the virus is no longer active.
 
 
 8
 At the sentencing hearing, Dr. Connerth testified that the defendants' attacks upon the victim had caused her to contract the virus. He noted that a pap smear taken of the victim in August 1989 had been negative for the virus. Dr. Connerth also stated that even if the victim had somehow contracted the virus from another source, the attacks "could have left small breaks" in her skin, making her more susceptible to the disease. He also said that the virus put the victim at a high risk for cancer and would be a lifelong condition. Based on this evidence, the government requested a four-level addition to the defendants' offense levels for causing "permanent or life-threatening bodily injury." U.S.S.G. § 2A3.1(b)(4)(A). However, the district court concluded that it could not grant this motion. The court stated that
 
 
 9
 Although I believe deep down that this event caused it, if I make that finding, then I must determine which of these two defendants is culpable, whether they both are, whether it's the trauma itself that's caused it. There's no doubt in my mind that she has it. There's no doubt in my mind that it is a serious and permanent condition. To attempt to say that since the statute refers to injury and not disease there should be a distinction drawn is a suggestion that I reject.
 
 
 10
 However, I believe the government has not sustained its burden of proof that the defendants caused this condition. I have my own thoughts, but I think they are not supported by evidence. So I sustain the objection as to the four level increase for the HPV.
 
 
 11
 The government appeals to this court.
 
 
 12
 The victim was also evaluated by a government psychiatric expert, who stated that she had suffered a permanent mental ailment from her attack. Based on this evidence, the government sought a two-level increase in the base offense level of both defendants for a serious injury caused to the victim. U.S.S.G. § 2A3.1(b)(4)(B). The defendants objected to this request, and Mr. Wallace moved that the victim be examined by his own psychological expert, Dr. Bruce Amble. Dr. Amble had examined certain tests administered to the victim and had concluded that while she needed counseling, she did not suffer from a serious injury as defined by the guidelines. The district court rejected this motion and granted the two-level increase:
 
 
 13
 [A]s to the mental injury, if you want to call it that, I remain of the opinion that this type of crime is the most degrading crime that one human being can commit against another, short of murder, and the psychological after effects do not require the testimony of a psychologist ... to know that the events concerning which I heard evidence and which the jury heard in this case go far beyond what I think the sentencing commission had in mind when it adopted the guideline. I believe that there is a serious bodily injury in the form of the mental disturbance this young woman has endured and in the future will endure.
 
 
 14
 The defendants appeal to this court. Finally, the defendants argued that their base offense level should be measured under U.S.S.G. § 2A4.1(a), which governs kidnapping, rather than the higher base offense level provided for sexual assaults under U.S.S.G. § 2A3.1(a). The district court, however, rejected this contention. The defendants appeal to this court.
 
 
 15
 With the two-level addition for mental injury, each defendant had a total offense level of 37 and a criminal history category of III, which establish a sentencing range from 262 to 327 months. The district court followed this guideline in sentencing Mr. Dean to 327 months imprisonment. Mr. Wallace received yet another two-level addition for obstruction of justice, giving him a final offense level of 39 and a criminal history of III. His sentencing range was thus 324 to 405 months, and the district court sentenced him to 405 months. The district court also recommended that these sentences run concurrently with the defendants' state-court sentences.
 
 II
 
 16
 "Review of sentences imposed under the guidelines is generally limited to a determination of whether the sentence was imposed in violation of law, as a result of incorrect application of the sentencing guidelines, or was outside the applicable guideline range and was unreasonable." United States v. Hernandez, 943 F.2d 1, 2 (5th Cir.1991); see also 18 U.S.C. § 3742(d). "In cases where the applicability of an enhancement provision is contested, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence. We review a district court's factual findings which underlie the application of a guideline provision for clear error." United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991) (citations omitted).
 
 
 17
 The defendants were sentenced pursuant to U.S.S.G. § 2A3.1, which governs criminal sexual abuse. Section 2A3.1(b)(4) provides that the sentence should be increased by four levels if the victim sustained "permanent or life-threatening bodily injury." The commentary to U.S.S.G. § 1B1.1 defines this phrase, in pertinent part, as follows: "Permanent or life-threatening bodily injury' means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." On its cross-appeal, the government contends that the district court's failure to apply this increase to the defendants constitutes clear error and should be reversed.
 
 
 18
 The government claims that it did not have to prove which of the defendants was actually responsible for the injury. It argues that the defendants acted together, and should therefore both take responsibility for their actions. In support, it cites U.S.S.G. § 1B1.3(a)(1), which provides that unless otherwise specified, the base offense level and specific offense characteristics shall be determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable...." The government also notes that under U.S.S.G. § 2X2.1, the offense level for aiding and abetting is "the same level as that for the underlying offense."
 
 
 19
 We reject this argument. According to evidence introduced below, neither defendant suffered from HPV. Furthermore, HPV can be contracted through non-sexual means. The evidence also showed that the victim had been sexually active. In light of these facts, we do not believe the district court committed clear error by finding that the government had failed to meet its burden of proof on this issue. We also reject the government's contention that the district court based its decision solely on its belief that it had to identify which defendant caused the virus. Although the district court made some comments to that effect, it also stated that "the government has not sustained its burden of proof that the defendants caused this condition." By referring to "the defendants," the court made clear that its ruling was based on the government's failure to prove that Mr. Wallace and Mr. Dean caused the injury, rather than the court's inability to determine which individual defendant was responsible. This conclusion seems to be the real basis of the district court's decision, and we find no reason to reverse it.
 
 III
 
 20
 Section 2A3.1(b)(4) of the Guidelines provides that a defendant's total offense level should be increased by two levels if the victim sustained "serious bodily injury." This phrase is defined in the commentary to U.S.S.G. § 1B1.1 as follows: " 'Serious bodily injury' means injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." In this case, the district court determined that the mental damage suffered by the victim justified granting this two-level increase. This determination was at least partially based upon its conclusion that "this type of crime is the most degrading crime that one human being can commit against another, short of murder...."
 
 
 21
 Mr. Dean argues that this finding is not supported by a preponderance of the evidence. Instead, he contends, the district court based its finding upon its unsupported belief that the victim has permanent psychological injuries. Mr. Wallace notes that the victim did not testify at the trial as to her mental condition, and claims that a report prepared by a government expert who examined the victim failed to find an injury that impaired her mental faculties or required medical intervention. Moreover, Dr. Amble, who evaluated the objective test results of the government expert's examination, concluded that the victim "is in need of psychotherapy services but I do think that she will be very responsive to such services and that they would significantly improvement [sic] over a period of three (3) to six (6) months." Mr. Wallace contends that the district court simply ignored this evidence and committed clear error by granting the two-level increase for serious bodily injury.
 
 
 22
 We reject these claims. Mr. Dean's argument rests upon a flawed premise; the district court found that the victim had suffered serious injury, not permanent injury. Furthermore, this court must give due regard to the district court's opportunity to judge the credibility of witnesses and must accept its findings unless they are clearly erroneous. United States v. Head, 927 F.2d 1361, 1372 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991); 18 U.S.C. § 3742(e). Having reviewed the record, we find no clear error in the district court's conclusion that the victim has suffered the impairment of a mental faculty, or requires medical intervention for her mental ailments. The government's psychological expert examined the victim and concluded that she had suffered a permanent ailment; even Dr. Amble acknowledged that "there are emotional scars that this child will carry with her for the rest of her life." This evidence strongly indicates that the victim suffered from a mental impairment. Moreover, we note that the district court had the chance to see and hear the victim testify at trial, and thus had an excellent opportunity to determine the mental anguish caused by this assault.
 
 IV
 
 23
 Mr. Wallace argues that the district court denied him due process by refusing to allow his psychological expert, Dr. Amble, to examine the victim. He claims that this denial was particularly damaging because the victim was examined by a government expert. At the sentencing hearings, defense counsel protested that it was inappropriate for the government to argue that Dr. Amble's report means nothing because he was not allowed to examine the victim. The district court rejected this protest: "I don't think [the government's attorney] is arguing it means nothing. I think he is arguing that his [psychologist's report] is entitled to more weight than yours and I think that's a legitimate argument." In light of this statement by the court, Mr. Wallace maintains that he was not allowed an "equal playing field" by the district court's refusal to allow Dr. Amble to examine the victim. He insists that this ruling violates due process because the government should not be able to send a victim to a psychologist for the purpose of developing evidence unless the defendant has the same opportunity.
 
 
 24
 "There is no constitutional right to discovery in a criminal case." United States v. Sanders, 893 F.2d 133, 137 (7th Cir.), cert. denied, 496 U.S. 907, 110 S.Ct. 2591 (1990). Instead, as this court has long recognized, "the District Judge possesses wide discretion in controlling discovery proceedings under Fed.R.Crim.P. 16," United States v. Armes, 470 F.2d 1353, 1355 (6th Cir.1972), cert. denied, 410 U.S. 967, 93 S.Ct. 1450 (1973). This principle has been applied to the type of discovery sought in this case. "The district court has broad discretion in determining whether to compel a witness to undergo a psychiatric examination." United States v. Raineri, 670 F.2d 702, 709 (7th Cir.), cert. denied, 459 U.S. 1035, 103 S.Ct. 446 (1982); see also Gilpin v. McCormick, 921 F.2d 928 (9th Cir.1990) (due process did not require state trial court to compel child victims of sexual assault to undergo psychiatric examination to indicate presence or absence of rape trauma syndrome). If district courts have such discretion during the guilt phase of the trial, they should certainly have these powers during the sentencing phase, in which procedural restrictions are not so strictly applied. See, e.g., United States v. Cardinal, 782 F.2d 34, 37 (6th Cir.), cert. denied, 476 U.S. 1161, 106 S.Ct. 2282 (1986) (hearsay information may be considered at a sentencing hearing).
 
 
 25
 Applying this law to the facts of this case, we find that the district court did not abuse its discretion by refusing to allow Dr. Amble to examine the victim. Dr. Amble reviewed the objective tests administered by the government's expert, and we have seen no evidence that the results of such tests would have differed had he interviewed the victim personally. Furthermore, the district court had to consider the personal intrusion of another examination upon a teenage rape victim. Before permitting a psychiatric evaluation, a court must consider "the infringement on a witness's privacy, the opportunity for harassment, and the possibility that an examination will hamper law enforcement by deterring witnesses from coming forward." United States v. Raineri, 670 F.2d 702, 709 (7th Cir.), cert. denied, 459 U.S. 1035, 103 S.Ct. 446 (1982). Finally, any examination Dr. Amble would have performed may have had no effect on the outcome; the district court determined that knowledge of "the psychological after effects [does] not require the testimony of a psychologist, whether she is an M.A. or a [Ph.D]."
 
 V
 
 26
 Section 2A4.1(a) of the Guidelines provides a base offense level of twenty-four for kidnapping, abduction, or unlawful restraint. However, under § 2A4.1(b)(7):
 
 
 27
 An enhancement is provided when the offense is committed ... to facilitate the commission of another offense. Should the application of this guideline result in a penalty less than the result achieved by applying the guideline for the underlying offense, apply the guideline for the underlying offense (e.g., § 2A3.1, Criminal Sexual Abuse).
 
 
 28
 U.S.S.G. § 2A4.1, comment. (backg'd). The district court in this case determined that this kidnapping was committed to facilitate the sexual attack upon the victim, and applied U.S.S.G. § 2A3.1, which covers criminal sexual abuse and carries a greater penalty than U.S.S.G. § 2A4.1.
 
 
 29
 Mr. Wallace argues that the district court erred in applying the criminal sexual abuse guideline. He argues that under U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b), a district court may impose a sentence outside the guideline range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." He claims that this case falls within this rule, since the defendants have effectively been punished twice (in both state and federal court) for the same offense. He claims that such punishment is tantamount to double jeopardy, and that the district court should have minimized its impact by applying the lower guideline. Mr. Dean makes a similar argument; he claims that the heavy sentences levied upon the defendants in state court constitute a mitigating circumstance that aggravated the amount of punishment issued to the defendants. He claims that the district court's failure to consider this circumstance worked a severe injustice upon the defendants.
 
 
 30
 Applying a guideline to "a particular set of undisputed facts is a question of law that is reviewed de novo." United States v. Wilson, 920 F.2d 1290, 1294 (6th Cir.1990). However, neither defendant denies that the kidnapping in this case was committed to facilitate a rape, and both rely largely upon the argument that applying the sexual abuse guideline amounts to double jeopardy. We reject this claim, because the defendants were not punished twice for the same offense. They were sentenced in federal court for the federal crime of kidnapping; the federal sentencing scheme simply requires higher sentences for kidnappings that lead to sexual abuse. Furthermore, even if both state and federal authorities punished the defendants for the same crime, such treatment would not violate the Double Jeopardy Clause of the fifth amendment. "[A] federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one." United States v. Wheeler, 435 U.S. 313, 317, 98 S.Ct. 1079, 1082 (1978).
 
 
 31
 Finally, this court cannot reconsider the district court's refusal to depart downward under U.S.S.G. § 5K2.0 because of the heavy state court sentences levied upon the defendants:
 
 
 32
 Where, as here, the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the failure to depart is not cognizable on appeal under 18 U.S.C. § 3742(a).
 
 
 33
 United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990); see also United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989).
 
 VI
 
 34
 Having reviewed the record, we find no error. The district court's decision is AFFIRMED.
 
 
 35
 NATHANIEL R. JONES, Circuit Judge, dissenting in part.
 
 
 36
 I concur in the majority opinion, except for its holding in Part III. That Part addresses the issue of whether the district court properly concluded that the defendants' victim sustained "serious bodily injury" sufficient to justify a two-level upward adjustment. As the majority correctly states, the guidelines define a "serious bodily injury" as one "involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." United States Sentencing Commission, Guidelines Manual, § 1B1.1, comment. (n. 1(j)) (Nov. 1991). The majority is also correct in noting that our standard of review of the district court's factual findings under the sentencing guidelines is the clearly erroneous standard. 18 U.S.C. § 3742(e) (1988); United States v. Duque, 883 F.2d 43, 44-45 (6th Cir.1989).
 
 
 37
 At this point, however, I part company with the majority. The defendants are correct when they argue that the government did not prove such an impairment of the victim's mental faculty as would support the district court's holding that the increase should be imposed on that ground. Neither the prosecution's expert nor defendants' own testified to evidence of any mental impairment. The prosecution's expert's statement that the victim may be at risk for developing posttraumatic-stress syndrome was the government's strongest evidence. The victim herself did not testify to any impairment.
 
 
 38
 The prosecution's response is that the district court found that the victim had serious bodily injury. This response is circular: she has it because the court found it, and the court found it because she has it. The prosecution then states that the primary basis for the district court's finding was the evidence presented at trial. We are not told, by the government or the court, what specific evidence supports this finding. The government points to only two concrete factors. First, it emphasizes a statement made by defendants' counsel, wherein he noted that defendants' expert acknowledged that "there are emotional scars that this child will carry with her the rest of her life." J.A. at 137. The second factor that the prosecution relies upon is the district court's opportunity to observe the victim first hand.
 
 
 39
 These two slight pieces of evidence do not persuade me, however, for the following reasons. The expert's statement, in the first instance, is taken out of context. Dean's counsel made the following comments at the sentencing hearing:
 
 
 40
 Dr. Amble [the defendants' expert] concludes that the--even that the [government's] psychologist makes a point of noting that the problems of the client are reactive and are not indicative of a person with chronic depression. He says that the prospects for severe or chronic psychological disease is not indicated.... He acknowledges that there are emotional scars that this child will carry with her for the rest of her life. I acknowledge it. That doesn't mean that her mental faculties are impaired. Judge, we all have losses. We all have trauma that we have to undergo in our life, the loss of a parent, the loss of a child. That doesn't mean that your mental faculties are impaired.
 
 
 41
 J.A. at 136-37 (emphasis added). Without implying in any way that I agree with those statements, I simply note that their point was that the victim's rape was just another one of life's traumas, such as losing a parent, that affect us all deeply. We all have such scars, he opined, but they do not constitute mental impairment. While I outright reject anything that might be interpreted as a trivialization of the victim's experience, I cannot agree that the one statement that the court and the government pulled out of Dr. Amble's report constitutes evidence of serious bodily injury in the form of mental impairment.
 
 
 42
 Moreover, the district court's opportunity to observe the victim holds great weight as to her credibility. Nonetheless, she did not testify that she is now mentally impaired or emotionally disturbed or anything of that nature. Thus, the district court's decision that she is impaired, to the extent it was based upon her testimony, would have to be a sort of psychological judgment of its own, which I do not believe it is qualified to make. The district court's reasoning speaks for itself:
 
 
 43
 [A]s to the mental injury, if you want to call it that, I remain of the opinion that this type of crime is the most degrading crime that one human being can commit against another, short of murder, and the psychological after effects do not require the testimony of a psychologist, whether she is an M.A. or a PhD, to know that the events concerning which I heard evidence and which the jury heard in this case go far beyond what I think the sentencing commission had in mind when it adopted the guideline. I believe that there is a serious bodily injury in the form of the mental disturbance this young woman has endured and in the future will endure. I believe that a two level increase is appropriate....
 
 
 44
 Id. at 138-39. As Wallace argues, the district court, by this ruling, has essentially established that all victims of rape under similar circumstances will have suffered a serious bodily injury for purposes of the guidelines. Its opinion is based on its abhorrence of the events that the victim had to live through. I, too, abhor the fact that daily--hourly--women are forced to experience the violation of their bodies through rape. I believe, however, that the sentencing commission has already set the base offense level for that crime at a level that takes the seriousness of the offense and the anguish that rape victims experience into account. The guidelines provide for a two-level increase of that offense level where the victim suffers, moreover, from serious bodily injury; in this case, in the form of mental impairment. I think the defendants are correct that no showing of a mental impairment was made. Accordingly, the district court's finding is clearly erroneous, and no increase to defendants' offense levels should have been imposed for infliction of serious bodily injury.