# Richmond

## Ernest Bobo v. Commonwealth of Virginia.

June 14, 1948.

Record No. 3388.

Present, All the Justices.

The opinion states the case.

*Joseph L. Savage, Jr.*, and *Hill, Martin & Robinson*, for the plaintiff in error.

*Henry T. Wickham, Special Assistant to the Attorney General*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The accused, Ernest Bobo, was tried by a jury, convicted of murder in the first degree, and his punishment fixed at death. The trial court approved the verdict and accordingly sentenced him to death.

Bobo had been arrested on March 12, 1947, by the sheriff and Mr. Lewis, his deputy, for vagrancy, and also on suspicion that he was a fugitive from South Carolina. He was placed in jail but not in a cell. Later on the same day the trial justice issued a warrant against him charging vagrancy. In the afternoon of March 12, Deputy Sheriff Lewis went into the jail with the janitor to allow the janitor to get some hot water for cleaning purposes. While Lewis was in the jail the accused grabbed his pistol which he was wearing in a holster. One James Dickerson, another prisoner in the jail, who was awaiting trial for bigamy and perjury and who was in a cell on the next floor above, testified that he heard Lewis say just before the shot, "Give me that gun", and that he heard the accused say, "Get back from that door; get the hell out and open that door, you son-of-a-bitch", and that a shot followed immediately.

Lewis was shot just below his eye, near his nose, and there were powder burns around the wound. This wound was the cause of his death which followed almost instantly.

The accused escaped with the pistol of Lewis, and was arrested later that afternoon after he had fired a number of shots at the officers who sought to arrest him. He was finally wounded by the sheriff of Hanover county. Later he was taken to the hospital at the State penitentiary for

treatment and when he had recovered he was removed to the jail at Fredericksburg. He was unable to provide counsel, and the court appointed Joseph L. Savage, Jr., of the Fredericksburg bar, to represent him. The case was set for trial two months in advance in order to give counsel time to prepare.

Dickerson who, as previously stated, was confined in a cell on the upper floor of the jail, was within hearing and heard what occurred. The felony charges against him had not been disposed of before the trial of Bobo.

Counsel for the accused, prior to his trial, applied to the court for permission to examine Dickerson as to his knowledge of what occurred between Lewis and the accused at the time the former met his death. The court granted the application but limited it. The order of the court reads as follows: "Ordered that Joseph L. Savage, Jr., counsel for the accused be and he is hereby authorized to talk with any witness summoned by the Commonwealth, provided, however, that such conference be held in the presence of the attorney for the Commonwealth after due notice given to him of the time and place for such conference. Ordered that the attorney for the Commonwealth do not interfere in any way with the examination of the witness by counsel for the accused."

Dickerson, who had been subpoenaed by both the Commonwealth and the accused, had been a paroled convict. The court felt that it was a proper precaution that at the time of the interview between counsel for the accused and Dickerson the attorney for the Commonwealth should be present. Counsel for the accused made strenuous objection to the presence of the Commonwealth's attorney and insisted that he wanted to confer with Dickerson privately but his objection was overruled.

When the attorney for the accused sought to examine Dickerson in the presence of the Commonwealth's attorney he refused to talk, saying that he had made a written statement and would not say anything further until sworn as a witness. The attorney for the Commonwealth did not

interfere or participate in the conversation between Dickerson and counsel for the accused.

One M. C. Allen was selected as a juror. On the day of the murder of Lewis, Allen was called by the sheriff with a number of other persons and deputized to hunt for the accused who had made his escape after shooting Lewis. He patrolled No. 2 Highway which was a mile or more from the scene where the accused was captured. He testified that he never shot at the accused nor did the accused shoot at him but that he saw the accused after he had been shot. He stated that he had formed or expressed no opinion as to the guilt or innocence of the accused at the time he was sworn as a juror and that his mind was open on the subject of the guilt or innocence of the accused.

When he was examined on his *voir dire* he did not reveal that he had been a member of the posse which searched for the accused and stated that at the time no one had interrogated him along that line. It was not discovered until after the verdict that Allen had been a member of the posse.

There are two assignments of error—first, that the court erred in refusing to permit counsel for the accused privately to interview Dickerson who was a material witness and the only witness to the crime except the accused; and, second, that the court erred in refusing to set aside the verdict of the jury on the ground that the juror, Allen, was not a proper juror, having served on the posse organized by the sheriff.

The disposition of the first assignment will be determinative of the case and render it unnecessary to discuss the second.

The attorney for the Commonwealth had procured an indictment against Dickerson for bigamy and perjury. He was the officer of the Commonwealth who was charged with the duty of prosecuting Dickerson. Naturally Dickerson would not be inclined to make any statement in his presence that might militate against the case of the Commonwealth. He may have thought that by refusing to talk to

counsel for the accused the attorney for the Commonwealth might in some manner favor him (Dickerson) in the prosecutions then pending against him. The fact is that Dickerson did withhold from counsel for the accused when interviewed in jail what he knew of the homicide, to which he later freely testified at the trial.

Conditions were such as to render it imperative in this case that counsel for the accused be accorded the privilege of interviewing this witness who was almost equivalent to an eye witness, freely and out of the presence of the attorney for the Commonwealth. His testimony was the only direct testimony of the actual homicide. In addition to this, Dickerson had been summoned not only as a witness for the Commonwealth but also as a witness for the accused, and if he had not been incarcerated at the time, no doubt the attorney for the accused would have interviewed him in the absence of the attorney for the Commonwealth.

There seems to be no valid reason for granting the attorney for the Commonwealth a higher right than is granted the attorney for the accused to interview a witness who has been summoned by both sides simply because that witness is in jail pending trial of a case which has nothing to do with the crime for which the accused is to be tried. The attorney for the accused has no right to be present when the attorney for the Commonwealth interviews such a witness, and likewise, it would seem that the attorney for the Commonwealth has no such right when the witness is interviewed by counsel for the accused.

In Virginia we have no case on this subject. Elsewhere the weight of authority seems to be that the accused should be accorded the right to interview material witnesses who might be in jail, in the absence of the prosecuting attorney. The cases are collected in an annotation in 124 A. L. R., at page 454.

The trial court, in its very carefully prepared opinion, concluded, "Moreover, Dickerson could not possibly have possessed any information or knowledge of any fact which

was not already in the possession of the accused. The accused was the only living person who was continously in the presence of the deceased from the time Mr. Lewis entered the jail until the homicide occurred. Such being the case, the accused was in no manner prejudiced by the order requiring his counsel to examine Dickerson in the presence of the Commonwealth's attorney, if he desired to examine him at all before the trial, and it is so held."

 It is with considerable reluctance we find ourselves unable to agree with that conclusion. Under section 8, article 1, of the Virginia Constitution, an accused has the unqualified right to "call for evidence in his favor". This includes the right to prepare for trial which, in turn, includes the right to interview material witnesses and to ascertain the truth. This fundamental right cannot be accorded the accused if he is hampered in his interview of his material witnesses by a prohibitory order of the court which refuses to grant him a private interview. The constitutional provision is not satisfied by a public interview: Dickerson being a witness for the accused, counsel for the accused was entitled to freely and privately talk with him.

 When the court is dealing with mandatory requirements of the law the principle *strictissimi juris* obtains. In the instant case human life is involved and the question to be determined is whether or not the accused, who has been sentenced to suffer the extreme penalty of the law, has had that fair trial guaranteed to him by the Constitution. Here it may be, according to the evidence, that a homicide was committed in cold blood, yet notwithstanding the enormity of the crime the prisoner, nevertheless, is entitled to the trial which the mandate of the Constitution requires. We must not permit the doctrine of harmless error or the requirement that prejudice must be shown to over-balance those fundamental rights.

In Virginia we have Code, sec. 2858 (Michie) which has not been invoked by either the Attorney General or counsel for the accused, though it has been cited in the brief. A reading of the statute will clearly disclose that

it has no bearing on such a case as the one here involved. That statute is one purely for the safety of the jail and those in control of it.

Our decision in this case is limited to the facts revealed by the record. We are not concerned with a witness who has been incarcerated and who was a co-conspirator and connected with the crime for which the accused is to be tried (*State* v. *Goodson*, 116 La. 388, 40 So. 771), nor with a witness who was jointly indicted with the accused (*Wilkerson* v. *State* (Tex. Cr. App.), 57 S. W. 956), nor a prosecuting witness such as the victim in a rape or seduction case (*State* v. *Storrs*, 112 Wash. 675, 192 P. 984, 197 P. 17). Here no bribery or intimidation is present. We simply have a witness summoned for the accused as well as for the Commonwealth, who is in jail awaiting trial for two felonies which are not connected in any manner with the homicide, and it is to that statement of fact alone that we limit our opinion.

The verdict of the jury is set aside, the judgment of the court reversed, and the case remanded for a new trial.

*Reversed and remanded.*