521 S.E.2d 313

Jack Enic CLARK

v.

COMMONWEALTH of Virginia.

Record No. 1425–97–4.

Court of Appeals of Virginia,
Richmond.

Nov. 30, 1999.

98

Peter D. Greenspun (Peter D. Greenspun & Associates, P.C., on briefs), Fairfax, for appellant.

John H. McLees, Jr., Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON and WILLIS, JJ., and COLE, Senior Judge.

COLE, Senior Judge.

Jack Enic Clark was convicted by jury trial of one count of sodomy and one count of statutory rape. On November 8, 1996, two months before trial, appellant moved for, *inter alia,* disclosure of the complaining witness' prior medical records and an independent medical examination ("IME") of the complaining witness. At a November 15, 1996 pretrial hearing, appellant argued that he had a due process right to present evidence in his favor. Specifically, appellant contended that the IME was necessary to defend the statutory rape charge and "extremely important" to adequately address and explain the physical findings of the sexual assault nurse examiner ("SANE"). Appellant informed the trial court that the complaining witness has "made prior complaints," and the prosecutor pointed out that the complaining witness had a pelvic examination "in the early part of 1995." Following argument, the trial court ruled that it did not have authority to require the complaining witness to submit to such tests and that to do so would place a tremendous chill on reporting and prosecu-

tion of such criminal activity. Appellant contends the court erred in denying his motion to require the complaining witness of a sexual assault to submit to an IME.

The following month, during a December 13, 1996 pretrial hearing pursuant to Code § 18.2–67.7, often referred to as the "rape shield law," the prosecutor acknowledged that the complaining witness made a complaint that her "adoptive step-father" sexually abused her, resulting in a 1995 pelvic examination.[1]

Whether a trial court has the authority to require an alleged victim of a sexual assault to submit to an IME is an issue of first impression in Virginia; therefore, we look to other jurisdictions for guidance.

## FEDERAL CASES

Although the federal courts have yet to address whether a trial court may require a complaining witness to submit to a physical examination, the United States Supreme Court addressed whether the government could require a criminal defendant to submit to a surgical procedure to remove a bullet that was alleged to be evidence of the crime. *See Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). Applying the balancing test put forth in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court ruled the surgical procedure unreasonable under the

---

**1.** In its initial August 1996 answer to discovery in the juvenile and domestic relations district court, the Commonwealth acknowledged that the complaining witness accused another man, her "adopted father," of forcing her to sleep with him in 1989. As a result, the complaining witness was examined by "Dr. Richter who did not find any evidence of injury; however she was not examined internally." Absent evidence of sexual abuse, Child Protective Services found the charge unsubstantiated.

In 1994, the complaining witness "left a note for her mother that she remembered her adopted father sexually abusing her." The Commonwealth stated that after the complaining witness indicated sexual intercourse had occurred, Dr. Anne B. Brown examined the complaining witness and performed a "full gynecological evaluation."

Fourth Amendment. *See Winston,* 470 U.S. at 763–66, 105 S.Ct. at 1618–20.

In *Gilpin v. McCormick,* 921 F.2d 928 (9th Cir.1990), the United States Court of Appeals for the Ninth Circuit addressed Gilpin's unsuccessful request for a psychiatric examination of an eleven-year-old female and a twelve-year-old female he was convicted of sexually assaulting. Gilpin argued that the examinations were "necessary to indicate the presence or absence of Rape/Trauma Syndrome (RTS)." *Id.* at 930. Gilpin argued that because "Montana has permitted the state to have an expert examine a complainant and offer her opinion at trial," it was "a denial of due process to refuse" his request for "the reciprocal opportunity." *Id.* at 930–31. The Ninth Circuit found no reciprocal authority or denial of due process, noting that the Montana cases upon which Gilpin relied involved situations where the complainant "volunteered to be examined by a psychiatrist" and that, under Montana law, an examination could not be compelled unless "a party's mental or physical state is in controversy." *Id.* at 931. According to the court, "[e]ven were Gilpin not to base his petition on lack of reciprocity, this circuit has never held that the defense may compel witnesses to be examined." *Id.*

The court concluded its analysis as follows:

> We are fully aware of widespread public concern over child sexual assault and abuse cases and the passions they arouse. Appellant invokes the specter of pliant children being hectored by psychiatrists and social workers into traducing scores of innocent adults with the stain of child abuse. But new constitutional rights cannot be found for every new passion that may drive criminal prosecutions. It is clear that Montana's refusal to compel child sexual assault victims to undergo psychiatric examination does not violate constitutional due process.

*Id.* at 931–32.

The United States Court of Appeals for the Fifth Circuit has held that a federal trial "court has broad discretion in determining whether to compel a witness to undergo a psychi-

atric examination." *United States v. Raineri,* 670 F.2d 702, 709 (7th Cir.1982). "In exercising this discretion the court must consider the infringement on a witness' privacy, the opportunity for harassment, and the possibility that an examination will hamper law enforcement by deterring witnesses from coming forward." *Id.*

## STATE CASES

Numerous states have addressed the issue of whether a trial court can order a complaining witness to submit to a physical examination. Most states addressing the issue have found to varying degrees that a trial court has discretion to order such an examination. One of the earliest opinions on the issue originated from the Alabama Court of Criminal Appeals. *See Lanton v. State,* 456 So.2d 873 (Ala.Ct.App.1984). In that case, "the child had been examined by a physician not a gynecologist." *Id.* at 874. The trial judge denied the defendant's motion for a physical examination of the thirteen-year-old alleged rape victim by a competent gynecologist.

> [The] physician testified as a defense witness that she could not determine whether or not the prosecutrix had engaged in sexual intercourse because the victim was too tense. The defendant alleged in his motion that he "has reason to believe an examination by a competent gynecologist would reveal that said ... [prosecutrix] has not engaged in sex."

*Id.*

Noting the absence of law on the issue, the court held that such a determination is " 'a matter of judicial discretion with the trial court, to be exercised only in cases of extreme necessity.' " *Id.* at 873–74. The court held that the " 'granting or refusal of an order for a physical examination of the prosecutrix ... will not be reversed except for a manifest abuse of such discretion.' " *Id.* at 874 (quoting C.J.S. *Criminal Law* § 80 (1952)).

In *People v. Nokes,* 183 Cal.App.3d 468, 228 Cal.Rptr. 119, 123–27 (1986), a magistrate refused to order a physical examination of the defendant's son in a sexual abuse case. The son

had not been examined by a physician. A trial judge later reversed the magistrate and dismissed the information. In reversing the trial court and upholding the magistrate's decision, the California Court of Appeals held that whether to order the examination "was within the discretion of the magistrate." *Id.* at 125. The court approved the manner in which the magistrate balanced the magnitude of the intrusion upon the complaining witness with the possibility of gaining exculpatory evidence. *See id.* at 122, 125. Although the Court of Appeals held that "the method of examination may have been reliable in the abstract," it further noted that "the reliability of the examination with respect to defendants' right to present an affirmative defense was virtually nonexistent." *Id.* at 126.

In *Turner v. Commonwealth,* 767 S.W.2d 557 (Ky.1988), the Kentucky Supreme Court held that the defendant, "as a matter of due process and fairness, was entitled at least to have the alleged victim examined by an independent gynecologist in preparation for trial." *Id.* at 559. The defendant, Turner, was convicted of raping his four-year-old daughter. A gynecologist examined the complaining witness in response to a request by the Department of Social Services. The gynecologist testified that the complainant had healed injuries to her hymenal ring at five locations or positions. *See id.* at 558. Because of the healing, the gynecologist could express no opinion about the age of the injuries. Although the gynecologist acknowledged that small girls sometimes do things that can rupture the hymenal ring, "she expressed the opinion that some of the injuries to the alleged victim were caused by penile penetration." *Id.* at 559. The Kentucky Supreme Court explained:

> Perhaps in the case of sexually active females a vaginal examination, remote in time from an allegation of sexual abuse, would reveal little of probative value as to whether sexual assault had occurred, but in the case of a four-year-old child, evidence of tears in the hymenal ring was a significant circumstance, and testimony that penile penetration caused the injury was a significant incriminating factor.

In this case, the alleged victim was only four years old. The physical examination of the child by an independent expert might have permitted the appellant to offer evidence to contradict that offered by the Commonwealth as to whether there were, in fact, any injuries to the hymenal ring. If such an injury was found, the examination by an independent expert may have enabled appellant to contradict testimony for the Commonwealth that the location of the injuries indicated the probability of penile penetration. In any event, the examination of the alleged victim by an independent expert and consultation with that expert as to the results of the examination would have been of material assistance to the appellant in his cross-examination.

*Id.* at 559.

Noting the need to balance the accused's rights with those of the complaining witness, the court explained:

In a case such as this, the critical question is whether the evidence sought by the appellant is of such importance to his defense that it outweighs the potential for harm caused by the invasion of the alleged victim's privacy and the probability that the prospect of undergoing a physical examination might be used for harassment of a prosecuting witness.

We must be vigilant not to open the door to the opportunity for a defendant in a criminal case to invade the privacy of a prosecuting witness or to harass the witness. In this case, a physical examination of the four-year-old child might have disclosed evidence to completely refute the charge, and at the very least, would have been of enormous benefit to the appellant in the conduct of the trial.

*Id.*

Shortly after *Turner*, the Rhode Island Supreme Court addressed the issue in *State v. Ramos*, 553 A.2d 1059 (R.I. 1989). There, the defendant was tried and convicted of sexually assaulting a twelve-year-old female. A gynecologist employed as an expert witness for the state examined the

complaining witness, who was then thirteen years old, "for evidence of vaginal penetration." *Id.* at 1061.

> Based upon the examination, the doctor found "penetration possible but not definite." Although the hymen of a thirteen-year-old girl normally covers about 50 percent of the vaginal entrance so that one finger may be admitted with some difficulty, [the doctor] testified that she could easily insert two fingers into the [complainant's] vagina during the examination without any resulting discomfort. The state's expert physician stated that although she found no obvious caruncle or torn edges of the hymen generally associated only with childbirth or very traumatic intercourse, [the complainant's] hymen was stretched, allowing for easy penetration into her vagina. Thus, comparing her examination of [the complainant] to vaginal examinations performed on other thirteen-year-old females, [the doctor] concluded that she was "fairly certain" [the complainant's] vagina had been penetrated.

*Id.*

The trial judge refused to order the complaining witness to submit to an independent medical examination. The Rhode Island Supreme Court affirmed the trial judge's decision, finding no abuse of discretion in denying Ramos' request. *See id.* at 1062. The court established the following procedure to follow in such situations:

> [A] trial justice has discretionary power to require a witness in a criminal trial to submit to an independent physical examination only under the most compelling of circumstances. In situations in which the defendant has shown substantial need and justification and no violation of substantial rights will result, the trial justice has discretionary power to order the complainant to undergo a physical examination. The practice of granting physical examinations of criminal witnesses must be approached with utmost judicial restraint and respect for an individual's dignity. In determining whether to order an independent examination, the trial justice should consider (1) the complainant's age, (2) the remoteness in time of the alleged criminal incident to

the proposed examination, (3) the degree of intrusiveness and humiliation associated with the procedure, (4) the potentially debilitating physical effects of such an examination, and (5) any other relevant considerations.

*Id.*

Two years after *Ramos,* the Colorado Supreme Court considered a defendant's request for involuntary, independent psychological and physical examinations of a child who was an alleged victim of sexual abuse. *See People v. Chard,* 808 P.2d 351 (Colo.1991). Relying on prior case law relating to involuntary psychological examinations, the court applied Colorado law to adopt the " 'compelling reason or need' " test with regard to involuntary physical examinations. *Id.* at 353 (citing *People v. Estorga,* 200 Colo. 78, 612 P.2d 520, 523–24 (1980)). The court noted a "split of authority [among the states] with regard to a trial court's power to order an involuntary physical examination of a child victim in the absence of statutory authority." *Id.* at 355. The court declined to adopt the view held in a minority of jurisdictions, "most notably North Carolina and Texas, [that] have held that in the absence of specific statutory authority, a trial court may not order an unwilling witness to submit to a physical examination." *Id.* (citing *State v. Hewett,* 93 N.C.App. 1, 376 S.E.2d 467, 472 (1989); *State ex rel. Wade v. Stephens,* 724 S.W.2d 141, 143–44 (Tex.Ct.App. 1987)).[2]

---

**2.** Under North Carolina case law, "a [trial] judge has no discretionary authority to require an *unwilling* witness to submit to [a psychological] examination." *Hewett,* 376 S.E.2d at 472.

In our view, a trial court would have the discretionary power to permit a second physical examination of an alleged sexual-abuse victim if the defendant shows the court that the examination would be probative, that it is necessary to the defendant's preparation of his defense, and if the victim or the victim's guardian consents to the examination.

*Id.* The Court failed to explain what would happen if an alleged victim refused to submit to an examination deemed probative and material.

In *State v. Drab,* 546 So.2d 54, 55 (Fla.Dist.Ct.App.1989), the Florida Court of Appeals for the Fourth District relied on a decision from the Court of Appeals for the First District in holding that "where compelling circumstances exist so that an accused may be deprived of his due

Instead, the Colorado Supreme Court "adopt[ed] the majority view and h[e]ld that a trial court may exercise its discretion to order an involuntary physical examination when a defendant demonstrates a 'compelling need or reason' for the examination." *Id.* at 356. Quoting the balancing test and factors to consider put forth in *Ramos,* the Colorado Supreme Court explained:

> The majority of courts considering the issue of whether a trial court has the power to order a compelled physical examination of a child victim in the absence of statutory authority have sought to balance a defendant's right to discover possible exculpatory evidence against the victim's privacy interests. These courts have attempted to strike the proper balance by holding that it is within a trial court's discretion to order an involuntary physical examination, but only on a showing by a defendant of a "compelling need or reason" for the examination.

*Id.* at 355 (citation omitted).

The court added:

> The highly intrusive nature of a physical examination raises the same concerns about emotional trauma, embarrassment, and intimidation to the child victim that are

---

process rights unless the complaining witnesses are compelled to undergo a physical examination, the state should be precluded from introducing as evidence at trial the results of a previous voluntary examination unless and until the complaining witnesses voluntarily submit to a physical examination by a qualified physician of the defendant's choice." *But see Fuller v. State,* 669 So.2d 273, 274 (Fla.Dist.Ct.App.1996) (Court of Appeals for the Second District noting that "[a]lthough the trial court's power to order a witness to undergo an examination is limited, the trial court has the authority to order an involuntary examination of a prosecution witness where strong and compelling reasons exist"; explaining "there may be instances in which an examination is necessary to protect a defendant's rights and the examination can be conducted without unusual harm to a victim"); *State v. Kuntsman,* 643 So.2d 1172, 1173 (Fla.Dist.Ct.App.1994) (Court of Appeals for the Third District noting that Florida's "District Courts [of Appeal] have recognized a trial court's authority to order an involuntary examination of a prosecution witness, but have limited the exercise of that authority to situations where strong and compelling reasons exist").

present with regard to a psychological examination. These concerns must be balanced against a defendant's right to discovery. We therefore adopt the majority view and hold that a trial court may exercise its discretion to order an involuntary physical examination when a defendant demonstrates a "compelling need or reason" for the examination. In exercising this discretion, the trial court must " 'balance the possible emotional trauma, embarrassment or intimidation against the likelihood of the examination producing material, as distinguished from speculative, evidence.' "

*Id.* at 355–56 (quoting *Estorga,* 612 P.2d at 523).

In *State v. Delaney,* 187 W.Va. 212, 417 S.E.2d 903, 907 (1992) (*en banc*), the defendant contended the trial court erred in denying his request for his court-appointed expert to physically examine children who were alleged sexual assault victims who had previously been examined by the state's expert. The West Virginia Supreme Court adopted the " 'compelling need or reason' test" put forth in *Ramos. Id.* at 907. The court held as follows:

We believe the guidelines established in *Ramos* are a reasonable method of balancing the defendant's need for the examinations against the victim's right to privacy. Thus, in order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence he has a compelling need or reason for the additional physical or psychological examinations. In making the determination, the judge should consider (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

*Id. See also State v. Barone,* 852 S.W.2d 216, 217, 221–22 (Tenn.1993) (ruling that a trial judge has inherent power to

require examination when a defendant demonstrates a compelling need, and adopting the factor-based balancing test "to provide trial courts with guidance in determining whether a compelling need exists for ordering a compelled physical examination").

Most states that have addressed the issue have held that a trial court has discretion to require an alleged victim to submit to an additional medical examination. *See, e.g., State v. Nguyen,* 52 Conn.App. 85, 726 A.2d 119, 125 (1999) (applying abuse of discretion standard in reviewing denial of defendant's motion for additional physical examination; holding that, in cases involving a child who is an alleged victim of sexual assault, courts must balance "the protection of the victim against the need of the defendant to present a defense"); *State v. Garrett,* 384 N.W.2d 617, 619 (Minn.Ct.App.1986) (requiring movant to demonstrate compelling reason before trial court may exercise its discretion in this area); *State v. D.R.H.,* 127 N.J. 249, 604 A.2d 89, 95–96 (1992) (holding that trial court may order a physical examination of a child who is an alleged victim of sex abuse only when satisfied that the defendant has made a sufficient showing that such exam can produce competent evidence that has substantial probative worth and that "if admitted and believed by the trier of fact, that evidence could refute or neutralize incriminating evidence or impugn the credibility of the prosecution witness"; also, "the court must be satisfied that the defendant's need clearly outweighs the possible harmful consequences to the alleged victim" requiring movant to demonstrate substantial need that outweighs need to protect complaining witness (citing *Turner, Ramos* and *Chard*)).

## CONCLUSION

In our adversary system of criminal justice, all relevant facts must be available to both the prosecution and the defense in order to preserve the system's integrity. In *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court said:

The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

*Id.* at 709, 94 S.Ct. at 3108. Moreover, the Virginia Supreme Court has said that "[calling for evidence in one's favor] is central to the proper functioning of the criminal justice system. It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense." *Massey v. Commonwealth*, 230 Va. 436, 442, 337 S.E.2d 754, 757 (1985). The right to prepare for trial and to present an adequate defense "lie at the heart of a fair trial, and when they are abridged, an accused is denied due process." *Gilchrist v. Commonwealth*, 227 Va. 540, 547, 317 S.E.2d 784, 787 (1984).

We agree with the majority view and hold that a trial court has discretion to require a complaining witness to submit to an independent physical examination, provided the defendant makes a threshold showing of a compelling need or reason. *Cf. Henshaw v. Commonwealth*, 19 Va.App. 338, 343–46, 451 S.E.2d 415, 418–19 (1994) (relying on language in Article I, Section 8 of the Virginia Constitution " '[t]hat in criminal prosecutions a man hath a right ... to call for evidence in his favor,' " we held that accused has a right to visit and inspect a crime scene under control of a third party provided he "makes a showing that a substantial basis exists" that "evidence relevant and material to his defense" will be obtained). In addition, after a defendant demonstrates a compelling need or reason, the trial court is then required to balance the defendant's due process and Sixth Amendment rights to present evidence in his or her favor against the complaining witness' welfare. In determining whether a compelling need has been demonstrated and in balancing the rights of the defendant with the rights of the complaining witness, the trial court should be guided by the factors and

considerations put forth in *Chard, Ramos, Delaney* and *Barone.*

■ In making its determinations, the trial court should consider, *inter alia,* "(1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use." *Delaney,* 417 S.E.2d at 907. In addition, the trial court should consider any other material facts and circumstances pertinent to balancing the competing interests and making a reasoned determination.

■ When considering the effects that a required examination may have upon the complaining witness, the trial court must be mindful of the due process rights of the complaining witness. Accordingly, the complaining witness should receive notice and have an opportunity to be heard before a decision is rendered involving his or her rights. *Cf. Darryl H. v. Coler,* 801 F.2d 893, 899–907 (7th Cir.1986) (holding that visual examination of unclothed alleged minor victim by child protection worker implicated Fourth Amendment concerns; discussing advisability of adequate notice and/or consent); Troy Andrew Eid, *A Fourth Amendment Approach to Compulsory Physical Examinations of Sex Offense Victims,* 57 U. Chi. L.Rev. 873, 895–901 (1990) (discussing scope of Fourth Amendment protection for complainants).

This decision is not intended to allow the criminal justice system to further traumatize an alleged victim. However, the rights of an accused may be clearly compromised when access to relevant evidence is denied under certain circumstances. The exercise of sound discretion by the trial court best protects the interests of the complaining witness, the accused and the Commonwealth.

Because the trial court ruled that it lacked authority to grant appellant's motion, we reverse and remand to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

BENTON, Judge, concurring.

I join in the opinion's "hold[ing] that a trial [judge] has discretion to require a complaining witness to submit to an independent physical examination provided the defendant makes a sufficient threshold showing." Therefore, I also would reverse the trial judge's ruling.

I write separately because I do not agree with the standard that the majority adopts to guide the determination whether the accused has made a sufficient threshold showing. When addressing the accused's constitutional "right [under the Virginia Constitution] ... to call for evidence in his favor," Va. Const. art. I, § 8, the Supreme Court of Virginia has generally used as a standard whether the accused has made a showing of materiality. *See, e.g., Massey v. Commonwealth,* 230 Va. 436, 442, 337 S.E.2d 754, 757 (1985) (holding that "the constitutional right to call for evidence in one's favor" includes the right to prove evidence material to an accused's defense); *McHone v. Commonwealth,* 190 Va. 435, 444, 57 S.E.2d 109, 114 (1950) (holding that no constitutional violation was proved absent a showing that the accused was deprived of "material evidence"); *Bobo v. Commonwealth,* 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948) (holding that the constitutional right of an accused to call for evidence in his or her favor "includes the right to interview material witnesses"). The Court has explicitly ruled that "[w]hen [an accused] seeks disclosure of evidence, the standard to be applied in determining its materiality is whether 'a substantial basis for claiming materiality exists.'" *Cox v. Commonwealth,* 227 Va. 324, 328, 315 S.E.2d 228, 230 (1984). Thus, when an accused establishes that evidence is material, "denying the [accused] access thereto violate[s] her constitutional right 'to call for evidence in [her] favor.'" *Id.* at 328–29, 315 S.E.2d at 230.

Citing *Cox*, we have applied the same standard in a similar context. In *Henshaw v. Commonwealth*, 19 Va.App. 338, 451 S.E.2d 415 (1994), an accused sought access to a private residence to inspect, photograph, and measure the purported crime scene. *See id.* at 339–40, 451 S.E.2d at 416. Ruling that the trial judge erred in refusing the request, we held that "[t]he right 'to call for evidence' in one's defense is an 'unqualified' right, which is restricted only by whether 'a substantial basis for claiming materiality exists.'" *Id.* at 344, 451 S.E.2d at 419 (quoting *Cox*, 227 Va. at 328, 315 S.E.2d at 230). I believe that this is the appropriate standard to be used in this case, in which Jack Clark relies upon the protection of Article I, Section 8 of the Virginia Constitution "to call for evidence in his favor."

We are not required to adopt the "compelling need" test. Other courts have used their state law as a basis for adopting an appropriate standard. *See State v. Barone*, 852 S.W.2d 216, 221–22 (Tenn.1993) (cataloging the rulings of courts of various states and noting that "state courts have adopted a number of approaches to determining whether an accused sex-offender is entitled to a compulsory physical examination of a complainant"). For example, the Supreme Court of Kentucky, when faced with this precise issue, ruled that the standard to be applied was whether the "results of the examination would have been of material assistance to the [accused]." *Turner v. Commonwealth*, 767 S.W.2d 557, 559 (Ky.1988). *See also State v. Hewett*, 93 N.C.App. 1, 376 S.E.2d 467, 472 (1989) (finding no abuse of discretion and ruling that the accused "failed to make a preliminary showing to the judge that the examinations would be probative and were necessary").

In Virginia, the constitutional right of an accused "'to call for evidence in his [or her] favor' ... is central to the proper functioning of the criminal justice system ... [and] is designed to ensure that the [accused] ... will not be unduly shackled in his [or her] effort to develop [the] best defense." *Massey*, 230 Va. at 442, 337 S.E.2d at 757. I believe that the standard announced in *Cox* best implements this constitutional protection.