# CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

v.

Joannis M. Hoard

March 9, 2011

Case No. CR10000723-00

BY JUDGE VICTOR V. LUDWIG

The matter comes to the Court for determination of whether to grant the Commonwealth's motion to quash a subpoena *duces tecum* (the SDT) to be served on the Middle River Regional Jail (MRRJ). The requested SDT is in conjunction with a criminal indictment against Joannis M. Hoard alleging that she violated Va. Code § 18.2-111 by embezzling "U.S. currency having the value of more than $200.00 belonging to Augusta Expoland" (Expoland). Although not specified in the indictment, the parties agree that a component of the crime involves an allegation that Hoard, an employee of Expoland, used for her personal benefit prison labor from MRRJ on work release, for which Expoland paid.

The specific items which Hoard requested that MRRJ produce in compliance with the subpoena *duces tecum* are:

1. All memoranda, documents, on paper or in electronic format regarding the incarceration, terms of incarceration, participation in work release, work release scheduling, including in and out times, any recorded statements or recordings of telephone calls with respect to the following inmates:

a. Keith Anthony Christensen,
b. Phillip Warner, and
c. Shane Smith.[1]
2. Recordings of Captain Moubray's[2] interviews of Keith Anthony Christensen, Phillip Warner, and Shane Smith, and recordings of meetings on September 9, 2010, with Mable Warren Cash, Jerry Pence,[3] and Paul McConnack [sic].[4]

For the reasons described in this letter, the Court grants the Commonwealth's motion to quash.

*Applicable Law*

Article 1, § 8, of the Constitution of Virginia provides, in part, that, "in criminal prosecutions, a man has a right to . . . call for evidence in his favor. . . ."
Rule 3A:11(b)(2) provides, in part:

Upon written motion of an accused, a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, that are within the possession, custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. This subparagraph does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or of reports, memoranda, or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case [with an exception not relevant to this case].

Rule 3A:12(b), which governs the issuance of subpoenas *duces tecum* in felony cases in circuit courts, provides in pertinent part:

---

[1] Each of these individuals is or was an inmate of MRRJ, and each participated in a work release program.

[2] Capt. Moubray is the employee of MRRJ in charge of criminal affairs and investigations.

[3] The Court is uninformed of whom either Cash or Pence is, although a comment which Moubray made during the course of the hearing implied that they are (or were) employees of Expoland.

[4] Paul McCormick is an investigator with the Augusta County Sheriff's Department.

Upon notice to the adverse party and on affidavit by the party applying for the subpoena that the requested writings or objects are material to the proceedings and are in the possession of a person not a party to the action, the judge or clerk may issue a subpoena *duces tecum* for the production of writings or objects described in the subpoena.

In its motion to quash, the Commonwealth represented that Christensen, Warner, Smith, Cash, and Pence are potential witnesses for the Commonwealth. As the footnotes indicate (and as the Facts below will further amplify), Captain Moubray and Investigator McCormick have been involved in investigations of prison labor provided to Expoland.

*Facts*

At the hearing on January 24, 2011, the parties presented very little evidence. The Commonwealth exhibited three sizeable stacks of papers, which Mr. Boylan [Assistant Commonwealth's Attorney] represented that MRRJ had assembled to comply with the SDT if the Court ordered that it respond. One was a typed compilation of the other two hand-written documents. In fact, although my notes are less than precise on the matter, I believe that the first ream of material had information of a broader scope than the latter two in that it was a comprehensive listing of data concerning all of the inmates involved in work release between January 4, 2010, and a date in August 2010. The second ream was a handwritten version of information comprehended by the first, including the beginning and ending times (I believe on a daily basis) of the inmates' releases and returns for work release, the persons who provided transportation for the inmates, and the identities of the correctional officers who were present at sign-out and sign-in. The third was a hand-written version of information related only to the inmates named in the SDT.

Moubray testified that there had been a complaint regarding working conditions by inmates on work release assigned to Expoland, and, as a result of that, he interviewed Christensen and Smith. (Warner would not talk to him.) As a result of those interviews, Moubray notified the Commonwealth's Attorney. The focus of the interviews involved issues of how officers of the facility were doing their jobs, information regarding sign-in and sign-out sheets, and other related matters. The purpose of Moubray's initial investigation was to determine if there was wrongdoing by jail officers (the specific nature of which he did not describe), and the inquiries were to determine where the inmates on work release were going, who was transporting them, and whether the inmates were working at Expoland "as opposed to anywhere else." Moubray acknowledged that, during the course of those interviews, he discovered information germane to his facility,

although he said that the information also involved the criminal case, which is the subject of this proceeding.

With respect to information specified in the SDT, Moubray testified that there were telephone calls between Puckett (a co-defendant of Hoard) and Warner, a call between Warner and Expoland, and a copy of a recording of a meeting between McCormick and officials of Expoland. Moubray added that there were recordings of some telephone calls that he released to McCormick, and he said that he also listened to those at the request of the Commonwealth's Attorney.

On cross-examination, Moubray testified that there is a file on each inmate, which is kept in the normal course of business regarding the inmate's conduct, his relationships in the jail community, etc. He gave "the case agent"[5] information concerning meetings by Smith and Christenson with Expoland, which information, he said, specifically addressed "whether or not to change the jail policies, although they might lead to a criminal investigation as well."

At the end of the hearing, in order to make some assessment of the materiality to her case of the information which Hoard was seeking, the Court asked that she submit a proffer of evidence. What Hoard submitted, however, was a list of specific items she seeks, with no discussion of why or how those items might be material to the case, leaving the Court to infer or speculate how she might use the information at trial or how it might otherwise be helpful to her in preparing or presenting her defense.

## Analysis

Hoard accurately states that a defendant has a Constitutional right under Article I, § 8, of the Constitution of Virginia to "call for evidence in his favor. . . ." Notwithstanding, "[t]here is no general constitutional right to discovery in a criminal case." *Spencer v. Commonwealth*, 238 Va. 295, 303, 384 S.E.2d 785 (1989), *cert. denied*, 493 U.S. 1093, 110 S. Ct. 1171, 107 L. Ed. 2d 1073 (1990) (citations omitted). Nevertheless, a criminal defendant's right to discover evidence in his favor encompasses evidence that might be used to impeach the prosecution's witnesses or other exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Moreover, even broader than the mandate of *Brady*, the case law in Virginia gives a defendant the right to request a subpoena *duces tecum* for evidence that is inculpatory or exculpatory, as long as the object of the subpoena is material to the case. *See Cox v. Commonwealth*, 227 Va. 324, 328-29, 315 S.E.2d 228 (1984). Finally, as the Court affirmed in *Cox*:

> This unqualified right includes "the right to prepare for trial which, in turn, includes the right to interview material

---

[5] I know neither what the "case" was nor who the "agent" is.

witnesses and to ascertain the truth." *Bobo v. Commonwealth*, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948). *See also Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611 (1948). This right applies with equal force to the procurement of documentary evidence.

*Id.* at 230. I note that these broader authorizations of discovery came in the context of a defendant's effort to obtain information from third parties, see *Commonwealth v. Mayer*, 18 Va. Cir. 426 (1990), or in the process of obtaining evidence that did not involve discovery under any Rule.

Those rights are not compromised by either of the Rules at issue in this case, and Hoard has not argued that they are. Considered in the context of this case, the right to "call for evidence" is not the equivalent of unfettered discovery from the Commonwealth or its agents under Rule 3A:11, nor does the free exercise of the right demand the production of writings or things from third parties beyond the scope of Rule 3A:12(b).

As framed by Hoard, "[t]he issue before this Court is whether the material sought by the defendant is subject to a SDT under Rule 3A:11(b)(2) of the Rules of the Supreme Court of Virginia and pursuant to Article 1, § 8, of Virginia's Constitution. . . ." *Defendant's Memorandum in Opposition to the Commonwealth's Motion to Quash*, page 2. That characterization of the question presented to the Court is troublesome because Rule 3A:11(b)(2) does not address a subpoena *duces tecum*; rather, the Rule contemplates a written motion asking the Court to order the Commonwealth's Attorney to permit the defendant to inspect and copy certain material, subject to specified limitations. In fact, Hoard filed a request for subpoena *duces tecum*, which request is governed by Rule 3A:12(b). Hoard's framing of the issue (and her reference to Rule 3A:11) is even more curious in light of the fact that she noted that the SDT was accompanied by an "affidavit stating that the records are relevant to this case and in the hands of a non-party," *id.*, a requirement clearly articulated in Rule 3A:12(b), but not in Rule 3A:11(b)(2), which requires "a showing that the items sought may be material to the preparation of [the defendant's] defense and that the request is reasonable."

Either the information which Hoard seeks (a) is in the hands of a third party, in which case Rule 3A:12 (which is not mentioned in the framing of the issue) establishes the criteria for the issuance of such a subpoena, or (b) it is in "the possession, custody, or control of the Commonwealth," in which case Rule 3A:11 applies, and no subpoena *duces tecum* is required to pursue it (but a motion is). Looking at the subpoena, which Hoard has requested, and the affidavit, which she submitted in support of it, it seems clear that she is acting pursuant to Rule 3A:12. In light of the Court's finding below that MRRJ is an agent of the Commonwealth, I could dispose of the case solely on that basis because that would mean that Hoard has

pursued the information under the wrong Rule. It makes a difference which Rule is invoked in these matters. See *Cox v. Commonwealth*, 227 Va. 324, 315 S.E.2d 228 (1984), in footnote 4. (That case involved predecessor rules, substantively similar, to the Rules under consideration in this case.) Nevertheless, it is not entirely clear to the Court under which rule Hoard is operating; so, given that it appears that the parties have argued both Rules, I will address the matter in that light.

Regardless of which specific remedy she seeks, reduced to its essence, Hoard's argument is based on two assertions. First, the Rule does not apply to the information she seeks because much of the information was maintained in the ordinary course of MRRJ's business and was not gathered in the course of investigating this case or for the purpose of developing evidence for the prosecution of this criminal case. This prong of the argument must be predicated either on Hoard's seeking the information (a) pursuant to Rule 3A:11(b)(2), in which she must concede that MRRJ is an agent of the Commonwealth but must also assert that the agency is not protected by the exception in the Rule, or (b) pursuant to Rule 3A:12(b), in which case she must be arguing that MRRJ is a third party and, necessarily, is not an agent of the Commonwealth.

Second, denying the Commonwealth's claim to the contrary, Hoard asserts that the request for information is not merely the sort of "fishing expedition" disapproved by the Court in *Farish v. Commonwealth*, 2 Va. App. 627, 346 S.E.2d 736 (1986).

To address the first prong of Hoard's argument, the Court must divine whether she is asserting (a) that MRRJ is not an agent of the Commonwealth or (b) that it is, but that the exception in Rule 3A:11(b)(2) does not apply to the information she is seeking.

It is difficult to conceive of a persuasive argument that would lead to the conclusion that a jail facility, operated by the Department of Corrections or by the locality, housing inmates accused or convicted of crimes against the Commonwealth, is not an agent of the Commonwealth. Both parties acknowledge that *Ramirez v. Commonwealth*, 20 Va. App. 292, 456 S.E.2d 531 (1995), is the starting point for the analysis of that issue. The Commonwealth argues that the holding in the case is dispositive; Hoard argues that it is distinguishable. In fact, it is confusing because the Court did not respond to the question presented to it, but, instead, answered a slightly different question.

Ramirez, who was accused of the rape of a child, was interviewed by an investigator with the Fairfax County Police and by Campbell, a social worker with the local Department of Social Services (the DSS). Ramirez filed a pre-trial motion pursuant to Rule 3A:12(b), to request the issuance of a subpoena *duces tecum*, specifically asking that the investigating police officer and the DSS (but with no reference to Campbell) be commanded "to deliver all documents, records, reports, statements, letters, recordings,

witness statements, investigative reports, photographs, or other writings or items relating to the allegations of defendant's misconduct toward [the victim]." *Id.* at 294. The trial court found the DSS to be an agent of the Commonwealth (hence not a third party susceptible to a subpoena *duces tecum* pursuant to Rule 3A:12[b]).

Noting that the DSS was directly involved in investigating the allegations of child abuse, but without alluding to the fact that the subpoena *duces tecum* was addressed to the DSS and not to any employee of that department, the Court of Appeals concluded that the:

> employees of DSS involved in the investigation of the child abuse allegation were agents of the Commonwealth for purposes of Rule 3A:11(b)(2). Clearly, statements made to these employees and their reports, memoranda, and internal documents were not discoverable. Rule 3A:11(b)(2). Moreover, under Rule 3A:12, the documents of DSS are not in the possession "of a person not a party to the action."

*Id.* at 296. Continuing to address the employees of the DSS, the Court added:

> Employees of Commonwealth agencies do not automatically qualify as "agents of the Commonwealth" for purposes of Rule 3A:11. However, where an agency is involved in the investigation or prosecution of a particular criminal case, agency employees become agents of the Commonwealth for purposes of Rule 3A:11 and must be considered a [sic] party to the action for purposes of Rule 3A:12.

*Id.* at 296-97. Although the language of the Court of Appeals is helpful, it is troublesome. The issue before it, and the issue which the trial court decided, was whether or not, for the purposes of Rule 3A:12(b), the DSS was a third party. Nevertheless, the Court of Appeals only obliquely addressed that question by its comment that "the documents of DSS are not in the possession of a `person not a party to the action'." Although one may infer from that statement that the DSS was an agent of the Commonwealth (and, therefore, not susceptible to a subpoena to a "third party"), the Court's only direct statement regarding agents of the Commonwealth was that "agency employees become agents of the Commonwealth. . . ." The Court compounds my confusion by its statement affirming the trial court "in its determination that DSS employees were agents of the Commonwealth," *id.* at 297, having first observed that the trial "court found DSS to be an agent of the Commonwealth. . . ." *Id.* at 294.

One thing that is clear from the holding in *Ramirez* is that employees of an agency of the Commonwealth (and, perhaps, the agency itself) are covered by Rule 3A:11(b)(2) and are not third parties under Rule 3A:12(b) if the agent (and, perhaps, the agency) is involved in the investigation about which information is being sought other than noting that agency employees are not always agents of the Commonwealth. The Court drew no bright lines and did not give any guidance illuminating the circumstances in which that dictum would apply.

As I noted above, the Court finds that MRRJ is an agency of the Commonwealth for the purposes of Rule 3A:11(b)(2). Having come to that conclusion and noting that the finding necessarily implies that MRRJ is not a third party for the purpose of Rule 3A:12(b), the Court could simply conclude its analysis and render a decision adverse to Hoard because it was under Rule 3A:12(b) that Hoard pursued the documents, rather than pursuant to Rule 3A:11(b)(2).

Nevertheless, although outside of the procedure which she followed, Hoard argues that she would be entitled to the information pursuant to Rule 3A:12(b) (relief which she did not seek) because *Ramirez* does not apply. The basis for that argument is that the evidence showed that some information that she seeks through the SDT was developed and maintained in the ordinary course of business by MRRJ; hence, even if it is an agent of the Commonwealth, Rule 3A:11(b)(2) does not apply because that information is not information developed "in connection with the investigation or prosecution of the case," Hoard's, argument fails for two reasons.

First, the Court finds that Hoard's characterization of at least some of the information which she seeks is not supported by the evidence. There can be little doubt that the copy of a recording of a meeting between McCormick and officials of Expoland (perhaps on September 9, 2010, with Mable Warren Cash and Jerry Pence) falls within the second sentence of Rule 3A:11(b)(2). In addition, Moubray added that there were some telephone calls that he released to McCormick, and he said that he also "listened to those at the request of the Commonwealth's Attorney." Finally, the Commonwealth has asserted that the three inmates and Cash and Pence are potential Commonwealth witnesses. The fact that the Rule precludes Hoard's obtaining information from the Commonwealth pursuant to the Rules, of course, does not prohibit her from interviewing the individuals. Moreover, she is constitutionally entitled to exculpatory evidence and she is entitled to discovery from the Commonwealth pursuant to Rule 3A:11(b)(1).

With respect to any information which Hoard seeks which is not addressed by the second sentence of the Rule, I note that the Rule consists of two sentences. The first broadly addresses information "within the possession, custody, or control of the Commonwealth." That sentence

authorizes the Court to grant a defendant's motion on a showing that the information is material and that the request is reasonable. The second sentence, more narrowly drawn, mandates an absolute limit on the Court's authority to grant the motion with respect to information developed in connection with the investigation or prosecution of the case. Hence, because MRRJ is an agent of the Commonwealth (and, therefore, part of the Commonwealth), even if some information which Hoard seeks is not addressed by the second sentence, it is, nevertheless, covered by the first sentence of the Rule.

In this case, Hoard has not shown that the information which she seeks is material (which the first sentence of the Rule requires). The only information which Hoard has offered is a more detailed list of the information which she seeks, with no showing of how it is material to her defense.

The second reason Hoard's argument fails is related to (but subtly different from) her failure to demonstrate materiality. Without that showing, the request has the scent of a fishing expedition which the Court disapproved in *Farish v. Commonwealth, supra*. In that case, the defendant sought information pursuant to Rule 3A:12(b). However, although he submitted the appropriate affidavit, the Court was not obliged to credit it. Indeed, not only could Parish not articulate a case for materiality, his own statements to the police negated the very defense he sought to prove by his discovery effort. Obviously, the facts of that case are more compelling than in the case before this Court, but the principle is the same. There must be a showing of materiality.

To the extent that the SDT is to be considered a request pursuant to Rule 3A:11(b)(2), *Farish* is also distinguishable because of the different requirements imposed on the moving party by the two Rules. Rule 3A:11(b)(2) requires only an affidavit. Rule 3A:11(b) requires a "showing that the items sought may be material." Hoard filed an affidavit, but there was no such showing at the hearing on January 24, and there was no such showing in response to the Court's request for a proffer of evidence from Hoard.

I ask that Mr. Boylan submit an order dismissing Mr. Weidner's motion, consistent with and incorporating this letter opinion.