## CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

v.

Thomas Monroe Faulkner

April 1, 2011

Case Nos. CR10000720-00, CR10000721-00

BY JUDGE VICTOR V. LUDWIG

The Commonwealth has indicted Thomas Monroe Faulkner, charging him with two violations of Va. Code § 18.2-178. Specifically, the allegation is that Faulkner defrauded the Cincinnati Insurance Company (Cincinnati) by filing false claims for jewelry that he represented to have been lost or stolen. Mr. A. Gene Hart and Mr. John C. Holloran represent Faulkner in the criminal action. During the hearing on March 24, 2011, Mr. Hart represented that also pending is a custody proceeding initiated by Faulkner's wife, who is represented by Ms. Jones, Esquire.

Taking judicial notice of its own records, the Court notes that the parties were divorced by order of November 2, 2010, that the Court incorporated a property settlement agreement (which did not include any resolution of child custody or visitation), and that the case was stricken from the docket of this Court, with all matters regarding child custody, visitation, and support transferred to the Juvenile and Domestic Relations District Court (the J&D Court). There is no appeal of a custody proceeding currently pending in this Court, so the matter to which Mr. Hart alluded must currently reside in the J&D Court.

The matter comes to the Court for determinations of (a) whether to grant Faulkner's motion for a bill of particulars, (b) whether to grant Faulkner's motion to compel Cincinnati to respond in certain respects to a subpoena *duces tecum* (the Cincinnati SDT), and (c) whether to grant

Jones' motion to quash a subpoena *duces tecum* (the Jones SDT) that Mr. Holloran has served on her pursuant to Rule 3A:12.

*Facts*

At the hearing on March 24, 2010, the parties presented no evidence, but Mr. Hart proffered that there is a parallel criminal proceeding involving Faulkner (but perhaps not pending) in federal court. Based on information given to defense counsel from the federal prosecutors and the postal inspector, Faulkner has concluded that his wife is the driving force behind both that investigation and the criminal case pending in this Court. Moreover, Faulkner suspects (and the Commonwealth did not deny) that Ms. Faulkner likely will be the primary witness for the Commonwealth. Mr. Hart represented that the assistant District Attorneys in charge of the federal case have contacted him, urging him to do what he can to bring the civil proceeding in this Court to a conclusion and have informed him that Ms. Jones has threatened to "go over their heads" if they do not promptly attend to the prosecution of the federal case. In the Motion in Camera, Faulkner alleges that Jones' purpose in communicating with both the federal and Commonwealth prosecutors is in an effort to have Faulkner incarcerated. He further represented that Ms. Jones has made overtures (which Mr. Hart, perhaps properly, characterized as threats) to the postal inspector. Mr. Hart (happily, not one given to painting the lily) did not represent (and acknowledged that he could not) that the federal authorities specifically told him that they had received written or electronic correspondence from Ms. Jones addressing her demands.

From the information which the federal authorities have given him, Mr. Hart argued that the inescapable inference is that Ms. Jones' actions are either at the behest of or at least on behalf of Ms. Faulkner and that the details regarding her inquiries could give rise to evidence admissible in this proceeding regarding Ms. Faulkner's bias and, therefore, give defense counsel an opportunity to blunt the impact of her anticipated testimony against Faulkner.

*Addressing Each of the Pending Matters*

A. *The Bill of Particulars*

The Commonwealth took the position that it has an open file policy and asserted that the information which defense counsel seeks is available to them if they would but avail themselves of that policy. Unhappy with the obligation imposed on the Commonwealth by the Bill of Particulars to "identify the specific items of jewelry . . . alleged to have been falsely reported to [Cincinnati] as stolen" and observing that defense counsel could

obtain that information (and more) by examining the files, Ms. Angela Landes nevertheless agreed that the Commonwealth would respond to the Bill.

## B. *The Cincinnati SDT*

Having reviewed the three disputed items, it is clear that the e-mail of October 25, 2009, from a representative of Cincinnati to Frith, Anderson, & Peake, and the firm's written response to it by letter of October 30, 2009, are protected by the attorney-client privilege. The third item, an e-mail dated October 23, 2009, from one Cincinnati representative to another, with a copy to an attorney which the company had retained, although a closer call, also appears to fall into that category.

## C. *The Jones SDT*

The Jones SDT was filed pursuant to Rule 3A:12 of the Rules of the Supreme Court of Virginia, and, although Mr. Hart could not represent to the Court that any such documents exist, the Jones SDT requests that she produce:

> [A]ny and all documents regarding [Jones'] communications with any government entities regarding [Faulkner's] pending criminal charges, including, but not limited to her communications with the Augusta County Commonwealth's Attorney's Office and the U.S. Attorney's Office.

I note at the outset that the breadth of the request ("any and all documents") would include, if they exist, privileged communications between Ms. Jones and Ms. Faulkner regarding whatever they discussed that relates to the pending investigation and criminal charges. Without bothering fully to develop the reasons for not permitting defense counsel access to information that would clearly violate the attorney-client privilege, I will assume that the information that defense counsel actually seeks relates only to that which was shared with third parties, thereby losing the protection of the privilege.

The caption of Rule 3A:12(a) addresses "attendance of witnesses," and the first paragraph provides, in part:

> A subpoena for the attendance of a witness to testify before a court not of record shall be issued by the judge, clerk, magistrate, *Commonwealth's Attorney, or by the attorney for the defendant.* A subpoena for the attendance of a witness to testify before a circuit court or a grand jury shall be issued by

> the clerk or *Commonwealth's Attorney and, for the attendance of a witness to testify before a circuit court, by the attorney for the defendant as well.*

(Emphasis added.)

Referring (despite the caption) only in part to a witness subpoena, Rule 3A:12(a) ¶ 2 provides, in part:

> *No subpoena or subpoena duces tecum* shall be issued in any criminal case . . . which *subpoena or subpoena duces tecum* is (i) directed to a member of the bar of this Commonwealth . . . , and (ii) compels production or testimony concerning any present or former client of the member of the bar, unless the subpoena request has been approved in all specifics, in advance, by a judge of the circuit court wherein the subpoena is requested after reasonable notice to the attorney who is the subject of the proposed subpoena. . . . *Such subpoena request shall be made by the Commonwealth's Attorney* for the jurisdiction involved, either on motion of the Commonwealth's attorney or upon request to the Commonwealth's attorney by the foreman of any grand jury.

(Emphasis added.) I recognize that the two paragraphs of Rule 3A:12 are not labeled by number as discrete paragraphs; nevertheless, for ease and clarity of reference, I will designate them as ¶ 1 and ¶ 2.

Faulkner maintains that Rule 3A:12(b) is inapplicable to this proceeding, although the language of it appears to be the basis of any subpoena *duces tecum* to be issued to a third party. Even assuming, however, that it does not apply, it is instructive when its requirements are juxtaposed with the other two provisions. Rule 3A:12(b) provides, in part:

> Upon notice to the adverse party and *on affidavit by the party applying for the subpoena* that the requested writings or objects are material to the proceedings and are in the possession of a person not a party to the action, *the judge or the clerk may issue a subpoena duces tecum* for the production of writings or objects described in the subpoena.

(Emphasis added.)

Although the placement of the dual topics addressed by Rule 3A:12(a) ¶ 2 (both the issuance of a witness subpoena to an attorney, consistent with the caption and the first paragraph of the Rule, and the issuance of a subpoena *duces tecum* to an attorney, which one might think would more properly appear in Rule 3A:12[b]) is somewhat curious, it does not appear

to be significant. As I noted, Faulkner maintains that Rule 3A:12(b) is inapplicable to his request for a subpoena *duces tecum* to Jones and that Rule 3A:12(a) ¶ 2 alone controls, but that seems unlikely. Whatever other involvement Ms. Jones has to this criminal proceeding, it is clear that she is a "person not a party to the action."

Rule 3A:12(a) ¶ 1 is an open invitation and blanket authorization for the Commonwealth's Attorney and the attorney for the defense to issue a witness subpoena. Rule 3A:12(b), which permits the more intrusive request for the production of writings and objects, is correspondingly more restrictive in that it requires an affidavit (showing that the items requested are material) and limits the authorization for issuing the subpoena *duces tecum* to the Court. In both of those rules, the language implies that the default is that the process will issue.

Both of the foregoing provisions describe the process for the issuance of process, and so does Rule 3A:12(a) ¶ 2. However, the latter Rule is different. It does not speak in terms of a subpoena that "shall be issued" or a subpoena *duces tecum* that the "judge or the clerk may issue;" rather, it speaks emphatically in the negative. The default is that "[n]o subpoena or subpoena *duces tecum* shall be issued" to an attorney who is in the category described in the Rule except on prescribed conditions.

Both Rule 3A:12(a) ¶ 1 and Rule 3A:12(b) describe who may initiate the procedure to issue a subpoena (either a witness subpoena or a subpoena *duces tecum*), and so does Rule 3A:12(a) ¶ 2. Both the Commonwealth's Attorney and defense counsel may issue a witness subpoena pursuant to Rule 3A:12(a) ¶ 1. Either party may request the issuance of a subpoena *duces tecum* pursuant to Rule 3A:12(b). However, unlike both of the other provisions, Rule 3A:12(a) ¶ 2 has the additional restriction that "[s]uch subpoena request shall be made by the Commonwealth's Attorney. . . ."

The term "such subpoena request" can only refer to the request for subpoena described in ¶ 2 (to subpoena the attorney as a witness or to subpoena her records), and there is no basis to infer that it refers to only one of the two types of subpoena. Moreover, in light of the specificity with which the other Rules speak to the issuer of, or the requestor for, the subpoena, one must infer that the final sentence of Rule 3A:12(a) ¶ 2 means what it says. Had the drafters of the Rule intended that the process be available both to the Commonwealth's Attorney and to defense counsel, they could have said so, as they did in Rule 3A:12(a) ¶ 1 (which includes defense counsel) and Rule 3A:12(b) (which includes both parties).

The conclusion that defense counsel has no standing to act pursuant to Rule 3A:12(a) ¶ 2 is driven by the plain language of the Rule. Assuming (and I do) that the relevant principles of statutory interpretation apply as well to the Rules of the Supreme Court, I note that "[w]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things." *Forst v. Rockingham Poultry Mktg. Coop. Inc.*,

222 Va. 270, 278 (1981). Moreover, courts may not, by interpretation or otherwise, "add to a statute language which the legislature has chosen not to include." *County of Amherst Bd. of Supervisors v. Brockman*, 224 Va. 391, 397 (1982). In this case, the Rules use different terms in describing who may act; in Rule 3A:12(a) ¶ 2, there is no reference to defense counsel being authorized to pursue "such subpoena." The Court therefore infers that the drafters intended that the Rules be distinguished, and any interpretation that would include defense counsel in the final sentence of Rule 3A:12 ¶ 2 would necessarily require that the Court add language to it with no basis to do so.

Faulkner accurately states that a defendant has a Constitutional right under Article I, § 8, of the Constitution of Virginia to "call for evidence in his favor. . . ."

> [I]n all capital or criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of twelve men of his vicinage, without whose unanimous consent he cannot be found guilty; nor can he be compelled to give evidence against himself; that no man be deprived of his liberty, except by the law of the land or the judgment of his peers.

The language from the Declaration was adopted as part of the Bill of Rights of the Virginia Constitution of 1776, adopted on June 29, 1776.

That is a right recognized in the Commonwealth before the birth of the United States (see Virginia Declaration of Rights, Art. I, § 8 [1776], adopted on May 15, 1776) and well before the adoption of the Sixth Amendment to the United States Constitution (which, addressing this particular issue, provides less expansive protection for defendants in criminal cases, ensuring only the right "to have compulsory process for obtaining witnesses in his favor"). The recognition of the right by the Commonwealth was responsive to the injustice of historical prohibitions against, *e.g.*, defendants' testifying on their own behalf or calling witnesses to rebut the testimony of the Crown's witnesses, and it included, at least, the right to call witnesses and to compel their attendance. Nevertheless, it had its limits; clearly, the right did not include any of the more expansive rights afforded defendants today by Constitutional decisions that have guaranteed more protections for defendants or, for that matter, access to information afforded defendants by the adoption of the Rules of the Virginia Supreme Court (which to some extent embody earlier holdings by the Court).

However, although Faulkner's right to "call for evidence" is partially addressed in Rule 3A:12(a) ¶ 1, it is not unconstitutionally compromised by the limitation of Rule 3A:12(a) ¶ 2. Considered in the context of this

case (and, for that matter, in the historical context of Article I, § 8, of the Virginia Constitution), Faulkner's "unqualified right to 'call for evidence in his favor'," *Bobo v. Commonwealth*, 187 Va. 774, 779 (1948), is not the equivalent of an unlimited right of discovery, nor does the free exercise of the right to call for evidence demand the production of writings or things from attorneys protected by the Rule. Indeed, "[t]here is no general constitutional right to discovery in a criminal case." *Spencer v. Commonwealth*, 238 Va. 295, 30 (1989), *cert. denied*, 493 U.S. 1093 (1990) (citations omitted).

That is not to say, however, that Faulkner has no right to discovery. For example, as I noted in *Commonwealth v. Hoard* a case which I decided earlier in the month:

> A criminal defendant's right to discover evidence in his favor encompasses evidence that might be used to impeach the prosecution's witnesses or other exculpatory evidence. See *United States v. Giglio*, 405 U.S. 150 (1972). Moreover, even broader than the mandate of *Brady v. Maryland*, 373 U.S. 83 (1963), the case law in Virginia gives a defendant the right to request a subpoena *duces tecum* for evidence that is inculpatory or exculpatory, as long as the object of the subpoena is material to the case. See *Cox v. Commonwealth*, 227 Va. 324, 328–29 (1984). Finally, as the Court affirmed in *Cox*:
>
> "This unqualified right includes 'the right to prepare for trial which, in turn, includes the right to interview material witnesses and to ascertain the truth.' *Bobo v. Commonwealth*, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948). *See also Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611 (1948). This right applies with equal force to the procurement of documentary evidence."

*Id.* at 230.

It is interesting that the Court in *Brady* never used the term "discovery" to describe what the Due Process Clause required to cure the issue before it. To be sure, defense counsel in that case did request the opportunity to review a co-defendant's out-of-court statement, but the Court's holding was couched more precisely in terms of prosecutorial misconduct in suppressing evidence than in establishing (or recognizing) a defendant's right to discovery. "We agree with the Court of Appeals that suppression of this confession was a violation of the *Due Process Clause of the Fourteenth Amendment*." *Id.* at 86. Nevertheless, at least Justice White was concerned with the broader implications of the Court's decision: "[T]he Court's due process advice goes substantially beyond the holding below. I would employ more confining language and would not cast in

constitutional form a broad rule of criminal discovery. Instead, I would leave this task, at least for now, to the rulemaking or legislative process after full consideration by legislators, bench, and bar." *Id.* at 92.

Pursuant to Rule 3A:11(b) and Rule 3A:12(b), the defendant has reasonably broad opportunities for the discovery of documentary evidence. The articulated limitation on that discovery right (except as limited by a requirement for a showing of materiality in the latter rule) is the proscription of Rule 3A:12(a) ¶ 2.

Having concluded that Rule 3A:12(b) ¶ 2 means what it says and that it does not violate the holding of *Cox* with respect to the defendant's obtaining documentary evidence, the remaining issue, raised more in passing than with any real focus, is the inequity created by affording the Commonwealth an opportunity for discovery which is not also afforded to the defendant. The analogous issue of reciprocity was addressed in *Wardius v. Oregon*, 412 U.S. 470 (1973), but the applicability of that doctrine as expressed there by the Court has not been applied in a circumstance such as the one pending in this Court.

In *Wardius*, the Oregon statute required that the defendant give notice of his intention to present an alibi defense and the identity of his alibi witness, but it did not require that the State identify its witnesses who would testify to rebut the alibi. The narrow holding of the Court in *Wardius* was "that the *Due Process Clause of the Fourteenth Amendment* forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Id.* at 472. Although the Court spoke at some length about "the balance of forces between the accused and his accuser," *id.* at 474, immediately after those comments, the Court further noted that "Oregon grants no discovery rights to criminal defendants, and, indeed, does not even provide defendants with bills of particulars." *Id.* at 475. Clearly, that observation has no application to the Commonwealth, given the scope of discovery afforded those accused of committing crimes.

The "reciprocity" in *Wardius* addressed the inequity of the defendant's having to disclose an element of his defense while obliging the Commonwealth to disclose nothing pertaining to its response to that defense. "Reciprocity" (by definition, contemplating some mutual exchange between the parties) is not an issue that impacts a rule that affords the Commonwealth an opportunity, not involving obtaining information from the defendant, to discover evidence, which opportunity is not available to the defendant. Finally, even if the term were given an expansive meaning to include something in the nature of equal rights to information from all sources, nothing in *Wardius* or its progeny suggests that the "reciprocity" must be absolute, with the defendant having a right to every discovery opportunity afforded the Commonwealth.

Finally, as I have noted, Faulkner maintains that Rule 3A:12(b) is inapplicable to this proceeding, and, as I have also noted, that is wrong.

Not only does Rule 3A:12(b) apply on its face, but, without it, there would be no guidance for the Court to make the decision whether or not to permit the issuance of a subpoena *duces tecum* pursuant to Rule 3A:12(a) ¶ 2. That Rule specifies the procedure for the issuance of a subpoena *duces tecum* to an attorney, but it gives no guidance to the Court as to how to make a decision to approve or deny one. Rule 3A:12(b), however, prescribes what the Court must consider (specifically, an affidavit stating that the information requested is material and, implicitly, a determination by the Court that it is material) in order to make its discretionary decision on the matter.

Even if Faulkner were authorized to act pursuant to Rule 3A:12(a) ¶ 2, he has not shown that the information which he seeks is material. In *Cox*, the Court held:

> When a defendant seeks disclosure of evidence, the standard to be applied in determining its materiality is whether "a substantial basis for claiming materiality exists." *United States v. Agurs*, 427 U.S. 97, 106 (1976). If materials in the hands of third parties "could be used at the trial," they are the proper subject of a subpoena *duces tecum*. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951).

*Id.* at 328.

In this case, Faulkner cannot even state with reasonable probability that the records he seeks even exist. The best he can say is that he has inferred from statements from federal authorities that the Commonwealth's chief witness is biased against him and, building inference on inference, that they have documentary evidence to support his conclusion. In light of the circumstance that Faulkner and his wife have recently been involved in a divorce proceeding in this Court and given Mr. Hart's representation that there is an ongoing custody dispute pending elsewhere, the revelation that Ms. Faulkner might be unhappy with her husband and, therefore, biased, should come as no surprise. However, absent some showing that there are documents to be had, even if Faulkner could proceed under the Rule, his effort in this case would be the sort of fishing expedition which the Court disapproved in *Farish v. Commonwealth*, 2 Va. App. 627 (1986).

I ask that counsel submit an order granting Faulkner's request for a Bill of Particulars, to which the Commonwealth has agreed, denying Faulkner's motion to compel additional responses from Cincinnati, denying Faulkner's motion *in camera*, and granting an (anticipatory) motion to quash filed on behalf of Ms. Jones.